IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KINSALE INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-03716 |
| | § | |
| WALLIS ENERGY, INC. AND | § | |
| HUMBERTO GONZALEZ, | § | |
| INDIVIDUALLY AND AS | § | |
| REPRESENTATIVE OF THE ESTATE OF | § | |
| CYNTHIA GONZALEZ, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF KINSALE INSURANCE COMPANY'S
<u>ORIGINAL COMPLAINT</u>**

Plaintiff Kinsale Insurance Company files its Original Complaint seeking declaratory relief under 28 U.S.C. section 2201 against Defendants Wallis Energy, Inc. ("Wallis") and Humberto Gonzalez, Individually and as Representative of the Estate of Cynthia Gonzalez ("Gonzales" and collectively with Wallis, "Defendants"). In support, Kinsale respectfully shows the Court the following:

**<u>NATURE OF THE ACTION</u>**

1.  Kinsale seeks a declaration that it has no obligation under the subject insurance policy to defend or indemnify Wallis for the allegations against it in the underlying suit styled *Humberto Gonzales, Individually, and as Representative of the Estate of Cynthia Gonzalez v. Wallis Energy, Inc.; Tri-Star Oil & Gas Corp; and Thomas Bruce Luttrell*; cause no. DC-21-193, in the 229th Judicial District Court of Duval County, Texas ("Underlying Suit").[1]

---

[1] Kinsale acknowledges the recent filing of cause no. DC-23-87, *Humberto Gonzales v. Wallis Energy, Inc., Tri-Star Oil & Gas Corp., Thomas Bruce Lutrell, and Kinsale Insurance Company*, in the 229th Judicial District Court, Duval

2. A true and correct copy of the Original Petition ("Petition") filed in the Underlying Suit on August 30, 2021 is attached as Exhibit "A" and incorporated fully herein.

## THE PARTIES

**A. Plaintiff Kinsale Insurance Company**

3. Kinsale is a corporation duly organized and existing under Arkansas law, with its principal place of business located in Virginia.

**B. Defendant Wallis Energy, Inc.**

4. Defendant Wallis Energy, Inc. ("Wallis") is a corporation organized and existing under Texas law, with its principal place of business located in Texas; thus, Wallis was at all relevant times a citizen of Texas.

**C. Defendant Humberto Gonzalez, Individually and as Representative of the Estate of Cynthia Gonzalez**

5. Defendant Humberto Gonzalez, Individually and as Representative of the Estate of Cynthia Gonzalez ("Underlying Plaintiff"), is an individual residing in Jim Hogg County, Texas, and was at all relevant times a citizen of Texas.

**D. Service of Process**

6. Wallis may be served with process through its agent for service of process, Michael W. Harvey, 4654 Baldwin Blvd., Corpus Christi, Texas 78476.

7. Underlying Plaintiff may be served with process at his residence which, upon information and belief, is at 1340 W. Lucille, Hebbronville, Texas 78361.

8. Service is not requested at this time as Kinsale is requesting waivers of service pursuant to Federal Rule of Civil Procedure 4(d).

---

County, Texas. That suit, however, has not been served on Kinsale and seeks to assert impermissible claims that would be subject to dismissal under Texas Rule of Civil Procedure 91a. As such, Kinsale submits that lawsuit and court are not the proper means for adjudicating this action.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. section 2201 and 28 U.S.C. section 1332(a) in that (1) the amount in controversy exceeds $75,000, exclusive of interest and costs, and (2) the dispute is between citizens of different states.

10. Jurisdiction is further appropriate because this is an action for declaratory judgment pursuant to 28 U.S.C. section 2201. An actual case or controversy of a justiciable nature exists between the parties involving the rights and liabilities under an insurance policy, in which litigation is imminent and inevitable, and which controversy may be determined by a judgment in this action.

11. This Court has general and specific jurisdiction over Defendants because (1) Defendants are citizens of Texas and this District; (2) Defendants have continuous and systematic contacts with Texas and this District; and (2) the events, transactions, and occurrences described herein have a substantial nexus to and occurred in Texas and this District.

12. Venue is proper pursuant to 28 U.S.C. section 1391 as Wallis resides and/or has its principal place of business within this District; Underlying Plaintiff resides in this District; and a substantial part of the events, transactions, and occurrences that give rise to Kinsale's claims occurred in this District.

## UNDERLYING SUIT

13. Underlying Plaintiff filed the Underlying Suit against Wallis and others.

14. The Underlying Suit arises out of the alleged "release, spill, emission, and discharge of harsh, hazardous gases, chemicals, and waste"[2] onto a ranch property located in Bruni, Webb County, Texas ("Property").

---

[2] *See* Orig. Pet., p. 9, ¶ 5.3.

15. Underlying Plaintiff alleges that Wallis operated a disposal well ("Disposal Well") on the Amado Perez oil lease, which was only 1,000 feet from a drinking water well ("Drinking Well") at the Property.

16. Underlying Plaintiff contends that Underlying Defendants Tri-Star Oil & Gas Corp. ("Tri-Star") and Thomas Bruce Luttrell ("Luttrell") oversaw and directed the "pressurized injection of highly toxic and poisonous oil-field waste into [the Disposal Well]," and operated the Disposal Well prior to Wallis.

17. Underlying Plaintiff alleges that around November 2019, he and his wife, Cynthia Gonzalez ("Mrs. Gonzalez"), began noticing a strong odor from the Drinking Well, but continued drinking from it.

18. Underlying Defendants Wallis, Tri-Star, and Luttrell (collectively, "Underlying Defendants") had allegedly been injecting the Disposal Well under high pressure with "highly toxic and poisonous oil-field waste," when the lining burst apart and "spewed into the soil like a raging river. That oil-field waste continued to move through the soil until it came into contact with the water in the" Drinking Well.[3]

19. On or about January 15, 2020, Underlying Plaintiff contends there was so much oil-field waste entering the Property's drinking water that it caused the well to overflow with a mixture of water and oil-field waste (the "pollution incident"). The amount of oil-field waste entering the Drinking Well continued to grow to the point where the Drinking Well was "continuously spewing water and oil-field waste everywhere."[4]

---

[3] *Id.*, p. 4, ¶ 4.4.

[4] *Id.*, ¶ 4.5.

20. Underlying Plaintiff allegedly later confirmed that the amount of benzene contaminating the Drinking Well was over 1,200 times the legal limit. The Drinking Well also had "had xylenes, chlorides, and four different petroleum hydrocarbons that all exceeded the maximum limit allowed by law."[5]

21. On January 24, 2020, Wallis reported the "pollution incident" to Kinsale. On January 28, 2020, the Texas Railroad Commission ordered Wallis to remediate the impacted area, stating that "'no person may cause or allow pollution of surface or subsurface water . . . .'"[6]

22. Underlying Plaintiff alleges that after November 2019, Mrs. Gonzalez's health began to deteriorate significantly. She did not stop drinking, cooking with, or using the water at the Property until January 2020. Mrs. Gonzalez passed away on April 3, 2020, with the cause of death allegedly listed as decompensated liver disease. Underlying Plaintiff claims that Underlying Defendants' actions in causing the "pollution incident" and contamination caused personal injury and premature death to Mrs. Gonzalez.

23. Underlying Plaintiff claims that as a result of the "pollution incident" and contamination, he lost his balance on multiple occasions, which caused significant bodily injuries including to his knee.

24. Further, Underlying Plaintiff alleges multiple cows died at the Property as a result of the "pollution incident" and contamination, and that Underlying Plaintiff needs a new drinking water well, new water pipes, new toilets, showers, and sinks. Underlying Plaintiff also claims he has had significant loss of earning capacity and loss of use of the Property, since he is unable to operate and run the Property without potable water, which is now contaminated.

---

[5] *Id.*, p. 6, ¶ 4.9.

[6] *Id.*, p. 6, ¶ 4.8.

25. Based on the foregoing, Underlying Plaintiff asserts causes of action for negligence, negligence per se, gross negligence, wrongful death, and under the Texas survival statute, and seeks damages in excess of $1 million against Underlying Defendants.

## THE POLICY

26. Kinsale issued Commercial General Liability Policy No. 0100092559-0 to First Named Insured Wallis Energy Inc. for the period from July 27, 2019 to July 27, 2020 ("Policy"). A true and correct copy of the Policy is attached as Exhibit "B."

27. The Policy is subject to an Each Occurrence Limit of $1 million and $2 million General Aggregate. There is a $5,000.00 deductible for Bodily Injury Liability and/or Property Damage Liability and/or Personal & Advertising Injury Liability, combined.

28. The Policy's Coverage A insuring agreement provides, in pertinent part:

 a. We will pay those sums that the insured becomes legally obligated to pay as "damages"[7] because of "bodily injury"[8] or "property damage"[9] to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . . .

\*\*\*

29. Additionally, the Policy contains the "Absolute Pollution Exclusion Amended with Time Element Pollution Incident Exception" endorsement no. EGY3015-0519 ("TEPE Endorsement"), which replaces the Policy's "pollution" exclusion f., so that insurance does not apply to:

---

[7] The Policy defines "damages" to mean judgments, awards and settlements that the "insured" becomes legally obligated to pay as a result of a covered "claim." "Damages" do not include declarative, injunctive or other non-pecuniary or equitable relief.

[8] The Policy defines "bodily injury" to mean bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

[9] The Policy defines "property damage," in pertinent part, to mean: (1) physical injury to tangible property, including all resulting loss of use of that property; or (2) loss of use of tangible property that is not physically injured.

> [A]ny claim or "suit" for "bodily injury", "property damage", . . . or any other injury, damage, or legal liability of any kind, arising directly or indirectly out of, related to, including, or, in any way involving the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape of, placement of, or presence of "pollutants", however caused, including but not limited to:
>
> a. Any loss, cost, expense, fines and/or penalties arising out of any (i) request, demand, order, governmental authority or directive, or, that of any private party or citizen action, that any insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess same, the effects of "pollutants", environmental impairments, contaminants or (ii) any litigation or administrative procedure in which any insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or placement of "pollutants", environmental impairments, or contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.
>
> b. The devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type of injury or expense.
>
> This exclusion applies regardless of fault or intent, regardless of the particular cause of action or theory of liability, regardless of whether a "pollutant" is the initial precipitating cause or is in any way a cause, in the chain of events, and regardless of whether any other actual or alleged cause other than a "pollutant" contributed concurrently, proximately, or in any other sequence to the "bodily injury", "property damage", . . . or any other injury, damage, or legal liability.
>
> ***

30. In addition, the TEPE Endorsement deletes and replaces the "pollutants" definition under the main CGL coverage part with the following: "any solid, liquid, gaseous, fuel, . . . irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or 'waste'. 'Waste' includes medical waste, biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed."

31. However, the TEPE Endorsement's "pollution" exclusion does not apply to "damages" because of "bodily injury" or "property damage" which directly results from a "time element pollution incident." The "time element pollution incident" must:

1. Begin at an identified time and place during the policy period; and

2. Not be a repeat or resumption of a previous discharge, dispersal, release or escape of the same "pollutant" from essentially the same source within twelve (12) months of a previous discharge, dispersal, release or escape; and

3. Result directly from "insured operations"; and

4. Be discovered by the insured within the "discovery time period"[10] shown in the Schedule above; and

5. Be reported to the Company in writing within the "reporting time period"[11] shown in the Schedule above.

\*\*\*

"Time element pollution incident" means the discharge, dispersal, release or escape of "pollutants" into or upon land or any structure on land, the atmosphere or any water course or body of water that arises from "insured operations" and results in environmental damage. All interrelated, repeated or continuous episodes of, and all "bodily injury" and "property damage" resulting from a "time element pollution incident" shall be deemed to a single "time element pollution incident" sustained at the time and date when the "time element pollution incident" first took place.

\*\*\*

32. Significantly, both the "discovery time period" and "reporting time period" begin with the "commencement of a 'time element pollution incident.'" Again, Underlying Plaintiff asserts that the "pollution incident" began no later than November 2019.

33. Additionally, the TEPE Endorsement's subpart 2., B., expressly addresses disagreements regarding application of 1. through 5., above:

> If we have a factual disagreement about whether a "time element pollution incident" meets requirements A.1. through 5. above, the burden of proof rests with the insured at the insured's own expense. We will have no obligation to defend any "suit" until we have accepted the insured's proof. Any fees and costs incurred by the insured until such time that we have accepted the insured's proof will be the sole responsibility of the insured.

\*\*\*

34. Under the Policy's "Common Conditions – Casualty" endorsement no. CAS2007 0817, "Legal Action Against Us,"

> No one may bring a legal action against us under this Policy unless there has been full compliance with all of the terms of this Policy. No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless it is commenced within twelve (12) months next after discovery by the insured of the

---

[10] The "discovery time period" is three (3) days. "Discovery time period" means the number of days, beginning with commencement of a "time element pollution incident" within which Wallis must discover a "time element pollution incident."

[11] The "reporting time period" is thirty (30) days. "Reporting time period" means the number of days, beginning with commencement of a "time element pollution incident" within which Wallis must report a "time element pollution incident" to Kinsale.

occurrence which gives rise to the claim, provided however, that if by the laws of the state within which this Policy is issued, such limitation is invalid then any such claims shall be void unless such action, suit or proceeding is commenced within the shortest limit of time permitted by the laws of such state. We will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance

\*\*\*

35. Lastly, the Policy's "Additional Policy Exclusions" endorsement no. CAS3043 0817 contains a "duty to defend" exclusion, which provides that "[w]here there is no coverage under this policy, there is no duty to defend."

## CAUSE OF ACTION – DECLARATORY RELIEF

36. Kinsale repeats and realleges paragraphs 1-30 as if fully set forth herein.

37. In the Petition, Underlying Plaintiff alleges a "pollution incident" and contamination of drinking water from benzene, xylene, chloride, and hydrocarbon, exceeding the maximum limits allowed by law. These allegations satisfy the Policy's definition of "pollutant."

38. Moreover, Underlying Plaintiff expressly alleged that the "release, spill, emission, and discharge of harsh, hazardous gases, chemicals, and waste onto the" Property "caused personal injury and premature death to [Mrs.] Gonzalez, personal injury to [Underlying Plaintiff], death of his cattle at the [Property], and inability to have potable water on the Ranch, and hazardous conditions." Underlying Plaintiff also alleged that as a result of the "pollution incident" and contamination, and that Underlying Plaintiff needs a new drinking water well, new water pipes, new toilets, showers, and sinks. Underlying Plaintiff also claims he has had significant loss of earning capacity and loss of use of the Property, since he is unable to operate and run the Property without potable water

39. The exclusion within the TEPE Endorsement applies where the "injury, damage, or legal liability of any kind" arises directly or indirectly out of, is related to, or in any way involves the "actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape of,

placement of, or presence of 'pollutants', however caused . . . ." Given the current allegations, the terms of the exclusion are implicated.

40. Again, however, the TEPE Endorsement's "pollution" exclusion does not apply to "damages" because of "bodily injury" or "property damage" which directly results from a "time element pollution incident." Because Wallis did not discover the "time element pollution incident" within the "discovery time period" (3 days) and did not report the "time element pollution incident" to Kinsale in writing within the "reporting time period" (30 days), the exception does not apply.

41. In the strict alternative, *even if* the exception applied, no coverage would exist under exclusion j. to the TEPE Endorsement, which precludes coverage for "bodily injury" or "property damage" arising out of a "time element pollution incident" which occurs or emanates from a "waste disposal site."[12] Again, Underlying Plaintiff alleges the "pollution incident" emanated from a disposal well, where "harsh, hazardous gases, chemicals, and waste" were released, spilled, emitted, and discharged onto the Property. *See* Orig. Pet., p. 9, ¶ 5.3.

42. Underlying Plaintiff alleges that Wallis operated a disposal well ("Disposal Well") on the Amado Perez oil lease, which was only 1,000 feet from a drinking water well ("Drinking Well") at the Property.

43. To summarize, the TEPE Endorsement precludes coverage for the Lawsuit. Pursuant to the Policy's "duty to defend" exclusion because there is no coverage under the Policy, there is no duty to defend.

---

[12] "Waste disposal site" means a site or any part of a site which is or was used for treatment, storage, disposal, or processing of waste.

44. Based on the foregoing, Kinsale is entitled to a finding and declaration that it has no obligation to defend or indemnify[13] Wallis or to pay any settlement amount, judgment amount, or any other amount whatsoever under the Policy in the Underlying Suit.

45. The insurance coverage provided by Kinsale is subject to and limited by all of the terms, limitations, conditions, definitions, exclusions, and endorsements of the Policy. There may be additional terms, limitations, conditions, definitions, exclusions, and endorsements other than those cited herein that operate to bar or limit coverage for some or all of the amounts for which Wallis seeks coverage and of which Kinsale is presently unaware. Further, Kinsale may have additional coverage defenses that cannot now be articulated due to insufficient knowledge or information. Kinsale therefore fully reserves its right to amend its Complaint to assert additional coverage defenses as they become known upon further investigation and discovery.[14]

## JURY DEMAND

46. Kinsale demands a trial by jury on all issues of fact, if any.

## PRAYER

47. WHEREFORE, Plaintiff Kinsale Insurance Company respectfully requests that the Court enter judgment in its favor for the following:

   a) Declaration that Kinsale has no obligation to defend Wallis in the Underlying Suit under the Policy;

   b) Declaration that Kinsale has no obligation to indemnify Wallis in the Underlying Suit under the Policy; and

   c) All other relief Kinsale is justly entitled, at law or in equity.

---

[13] *Farmers Texas Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (duty to indemnify justiciable before insured's liability determined in underlying suit "when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any duty to indemnify*.") (emphasis in original).

[14] By way of example and not limitation, these additional coverage defenses include the "occurrence" and policy period requirements within the Policy's Coverage A insuring agreement; the Policy's "known loss" provisions and the "fortuity" doctrine; the "expected or intended" exclusion a.; and the Policy's conditions, including but not limited to the "other insurance" and "legal action against us" provisions.

Dated: October 3, 2023

Respectfully submitted,

COZEN O'CONNOR

By: */s/ William H. Craven*
Alicia G. Curran
Southern District Admission 19226
Texas Bar No. 12587500
acurran@cozen.com
William H. Craven
Southern District Admission 2526820
Texas Bar No. 24082870
wcraven@cozen.com
1717 Main Street, Suite 3100
Dallas, TX 75201-7335
Telephone: (214) 462-3000
Facsimile: (214) 462-3299

COUNSEL FOR PLAINTIFF
KINSALE INSURANCE COMPANY